UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AMEX ELECTRIC SERVICES, INC.; and ABEL ALVAREZ | § § § | |
| Plaintiffs. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:18–CV–00268 |
| BLANCHARD REFINING CO., LLC, d/b/a GALVESTON BAY REFINERY | § § § § | |
| Defendant. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendant Blanchard Refining Company LLC's Motion to Dismiss ("Motion to Dismiss"). *See* Dkt. 12. This motion was referred to this Court by United States District Judge George C. Hanks, Jr. *See* Dkt. 21. After careful consideration of the Motion to Dismiss, the response, the reply, and applicable law, the Court **RECOMMENDS** that the Motion to Dismiss be **DENIED**.

### FACTUAL ALLEGATIONS[1]

Plaintiff Abel Alvarez ("Alvarez") is a Hispanic male and the president and majority shareholder of Plaintiff Amex Electric Services, Inc. ("Amex"). Amex is a corporation that provides "services for the installation, maintenance and repair of electrical equipment and facilities." Dkt. 1 at 2.

---

[1] This section consists of the facts as alleged in Plaintiffs Amex and Alvarez' [sic] Original Complaint.

1

Defendant Blanchard Refining Company LLC ("Blanchard") owns and operates a petroleum refinery. In April 2014, Blanchard entered into a five-year Major Service Contract ("MSC") with Amex.[2] The MSC designates Amex as a CONTRACTOR and provides that Blanchard may, from time to time, request Amex to perform various electrical work at the refinery. *See* Dkt. 12-1. Importantly, the MSC states:

> This Contract does not obligate [Blanchard] to order services from CONTRACTOR nor does it obligate CONTRACTOR to provide services to [Blanchard], but shall control and govern all services ordered by [Blanchard] and accepted by CONTRACTOR hereunder, and shall define the rights and obligations of [Blanchard] and CONTRACTOR with regard to the matters covered hereby.

*Id.* at 4.

In February 2015, less than one year after executing the MSC, steelworkers employed by Blanchard went on strike, interrupting Amex's ability to provide electrical services to Blanchard. As a result, Blanchard "advised Alvarez that Amex workers were not to return to their work at the refinery until the Steelworkers' strike ended." Dkt. 1 at 6.

After the strike ended in June 2015, Blanchard stopped using Amex's services and began to send all its electrical job orders to other non-minority owned electrical service firms. Nonetheless, Amex continued to communicate to Blanchard its willingness to provide electrical services throughout the term of the MSC. In response, on or about August 8, 2016, Blanchard reassured Alvarez that the MSC remained in effect and that

---

[2] Prior to executing the MSC, Amex had provided services to Blanchard and the refinery's previous owners and operators for some 40 years.

2

Amex should remain prepared to render services. However, Blanchard has not provided any job orders to Amex since the steelworker strike began in February 2015.

On September 5, 2018, Alvarez and Amex filed suit against Blanchard. Amex brings a claim under 42 U.S.C. § 1981, alleging that Blanchard interfered with its right to make and enforce contracts. Alvarez does not assert a Section 1981 claim.[3] Instead, Alvarez alleges an unspecified cause of action against Blanchard for "damages to [his] reputation as provided under the common law and statutes of the State of Texas." Dkt. 1 at 2.

Blanchard now moves to dismiss this lawsuit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a

---

[3] In the Motion to Dismiss, Blanchard seeks the dismissal of "Alvarez's individual Section 1981(a) claim." Dkt. 12 at 5. In response, Alvarez states that his "claims are not asserted under the federal Civil Rights Act, but under Texas Law." Dkt. 16 at 9. At oral argument, Alvarez's counsel again made clear that Alvarez has not asserted an individual claim under Section 1981.

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks and citation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S at 556 (internal quotation marks and citation omitted). It is important to highlight that a motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotation marks and citation omitted).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

## ANALYSIS

### A. AMEX'S SECTION 1981 CLAIM

Section 1981 provides in pertinent part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To sufficiently

4

plead a claim under Section 1981, Amex "must allege facts in support of the following elements: (1) [Amex] is a member of a racial minority; (2) an intent to discriminate on the basis of race by [Blanchard]; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)(citation omitted).

Amex easily satisfies elements one and two. Amex takes on the racial identity of Alvarez, its president and majority shareholder: Hispanic. This satisfies element one. *See, e.g., Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (finding that plaintiff adequately pled the first element of a Section 1981 claim by alleging that business was minority owned). Amex has offered facts that plausibly suggest that Blanchard's sudden discontinuation of providing it job orders might be due to Alvarez's race. This satisfies the second element. The third element, however, requires a brief discussion.

Blanchard contends that Amex's "allegations center on alleged discrimination in its ability to enforce its rights under the MSC with Blanchard Refining—specifically, the right to receive job orders for work at the refinery." Dkt. 12 at 3. Based on this contention, Blanchard argues that Amex has not pled factual allegations that show it had an enforceable contractual right to job orders under the MSC, and this is fatal to Amex's claim because "a plaintiff cannot state a claim under Section 1981 unless [it] has rights under the existing contract that [it] wishes to 'make and enforce.'" *Id.* (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475–76, 480 (2006)). Boiled down, Blanchard believes that Amex's claim is all about enforcing the MSC, and because the MSC states that Blanchard

5

was not obligated to send Amex job orders, Amex has no contractual right related to job orders to enforce. The Court finds Blanchard's argument unpersuasive.

As mentioned above, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In other words, discriminatory conduct surrounding the formation, creation, implementation, modification, execution, and termination of a contract falls within the ambit of Section 1981. Where exactly Amex's claim will ultimately fall is less than clear at this motion to dismiss stage. But what is clear is that discriminatory conduct concerning any of the activities enumerated in Section 1981 is prohibited.

Although Blanchard seeks to construe Amex's claim as merely being an enforcement claim, the Complaint does not mandate such a construction. The Complaint's allegations and the reasonable inferences flowing from those allegations suggests that Amex's gripe about the sudden discontinuation of job orders not only implicates "enforcement," it also arguably implicates "performance" under the MSC. This is so because while the MSC might not obligate Blanchard to provide job orders, it certainly identifies Amex as a contractor authorized to receive job orders. And if Blanchard is refusing to provide Amex any job orders for a discriminatory reason, that would clearly constitute discrimination affecting the "performance" of the contract under Section 1981.[4]

---

[4] At oral argument, Amex's counsel asserted that his argument was based on Blanchard's essential "termination" of the MSC. Although counsel described his argument using the term "termination," the Court finds that the argument is more properly related to "performance" under the MSC.

Blanchard asks the Court to ignore this fact based on the discretionary language used in the MSC, as if such language immunizes it from Section 1981 claims. Said another way, Blanchard seems to suggest that with respect to its contractors, if the contract provides that the assignment of job orders is discretionary, its refusal to send job orders—no matter the reason—can never amount to a claim under Section 1981. This is not the law.

The Court finds that Amex has adequately identified specific facts in the Complaint that plausibly suggest that Blanchard discriminated against it as a racial minority by interfering with its ability to "make and enforce contracts" as enumerated in Section 1981. Blanchard's Motion to Dismiss the Section 1981 claim against Amex should be denied.

## B. ALVAREZ'S STATE LAW CLAIMS

Turning to Alvarez's individual claims, Blanchard argues that Alvarez does not have valid state law claims because all of Alvarez's purported damages are derivative of Amex's claim. In his response, Alvarez disputes Blanchard's characterization of his state law claims, asserting that "Alvarez'[s] state law claims arose a year after the § 1981 claim asserted by Amex Electric, are based on different conduct and seek distinctive relief." Dkt. 16 at 11. Nowhere in the Complaint, however, does Alvarez specifically identify his state law claims. Rather, he merely asserts that he is seeking "damages to [his] reputation as provided under the common law and statutes of the State of Texas." Dkt. 1 at 2. Because the Court cannot clearly discern Alvarez's specific state law claims, the Court is reluctant, at this time, to formally weigh in on whether the Complaint sufficiently alleges a recognizable claim on behalf of Alvarez.

The Court believes it would be best if Plaintiffs amend their Complaint by June 12, 2019 to clearly identify Alvarez's causes of action and any applicable state statutes. Blanchard can then seek to dismiss the individual claims raised by Alvarez and the Court will be in a much better position to assess the legal basis for Alvarez's causes of action. Accordingly, the pending Motion to Dismiss should be denied without prejudice as far as Alvarez's claims are concerned. Upon the filing of an amended complaint, Blanchard is authorized to seek dismissal of Alvarez's claims without the need to participate in another pre-motion conference.

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Motion to Dismiss be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 6th day of June, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE