United States District Court
Southern District of Texas
**ENTERED**
January 15, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AMEX ELECTRIC SERVICES, INC., ET AL., | § § § | |
| Plaintiffs. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:18–CV–00268 |
| BLANCHARD REFINING CO., LLC, d/b/a GALVESTON BAY REFINERY, | § § § § | |
| Defendant. | § § | |

## **MEMORANDUM AND RECOMMENDATION**

Before me is Defendant Blanchard Refining Company LLC's Motion for Summary Judgment ("Motion for Summary Judgment"). *See* Dkt. 40. After reviewing the summary judgment briefing, analyzing the relevant case law, and hearing oral argument, I recommend that the Motion for Summary Judgment be **GRANTED**.

### **FACTUAL BACKGROUND**

Plaintiff Abel Alvarez ("Alvarez") is a Hispanic male and the president and majority shareholder of Plaintiff Amex Electric Services, Inc. ("Amex"). Amex is a corporation that provides services for the installation, maintenance, and repair of electrical equipment and facilities. Defendant Blanchard Refining Company LLC ("Blanchard") owns and operates a petroleum refinery now known as the Galveston Bay Refinery.

1

On April 30, 2014, Amex and Blanchard entered into a Major Service Contract ("MSC").[1] The MSC had a term of five years—from April 2014 through April 2019—and governed the provision of services at the refinery, if any were ordered by Blanchard and accepted by Amex. Under the provisions of the MSC, Amex rendered electrical services for Blanchard once Blanchard issued a job order to Amex. The MSC did not obligate Blanchard to provide any such job orders to Amex, nor Amex to accept any job orders. In fact, the MSC specifically provided:

> This Contract does not obligate [Blanchard] to order services from [Amex] nor does it obligate [Amex] to provide services to [Blanchard], but shall control and govern all services ordered by [Blanchard] and accepted by [Amex] hereunder, and shall define the rights and obligations of [Blanchard] and [Amex] with regard to the matters covered hereby.

*Id.* at 4. Although Blanchard was not contractually obligated to provide work to Amex, Blanchard issued job orders to Amex after executing the MSC.

In 2014, Blanchard began preparing for a potential strike by the United Steelworkers Union. As part of the preparation, Blanchard reviewed which contractors should continue working during the strike. Blanchard sought to minimize the number of contractors that would cross the picket line during the strike yet ensure that the refinery had enough resources available to continue operating. As such, Blanchard planned to perform work using its own employees and planned to reduce the number of contractors, which also minimized the internal resources needed to oversee the contractors. Prior to

---

[1] For approximately 30 years prior to Amex and Blanchard executing the MSC, Amex had provided services to Blanchard and the refinery's previous owners and operators.

the start of the strike, Amex was working on projects at the refinery with a crew of approximately 20 people.

On February 1, 2015, employees represented by the United Steelworkers Union went on strike. Blanchard, in accordance with its strike plan, demobilized multiple contractors, including Amex. There was a drastic reduction in routine-maintenance contractor work at the refinery.

During the strike, Blanchard utilized its own salaried employees to perform electrical work and, for the remaining work, Blanchard primarily used Instrumentation & Electrical Specialist, LLC ("IES") as its electrical contractor. IES is a larger contractor that had a wider work scope and more capacity than Amex.

IES performed well during the strike, and the strike confirmed that the electrical work could be done efficiently using this combination of internal and contractor resources. When the strike ended in July of 2015, Blanchard continued utilizing both in-house resources and, primarily, IES for basic electrical work. Blanchard informed Alvarez that Amex would not be coming back to work at the refinery. At the same time, the MSC remained in effect as neither Amex nor Blanchard exercised its right to terminate the MSC.

Sometime in 2016, Alvarez requested a meeting with Blanchard. In response to the request, Blanchard met with Alvarez and his attorney in August 2016. In the amended complaint, Alvarez alleges that during the 2016 meeting, he inquired about the MSC. However, in his deposition, Alvarez testified that he only remembered having the meeting but not any specific matters discussed during the meeting. Blanchard officials,

however, testified that they discussed the MSC with Alvarez in the meeting, assuring him that the MSC remained in effect. Alvarez states the same thing in a declaration submitted in response to the Motion for Summary Judgment. After the 2016 meeting, Alvarez did not have any additional conversations with Blanchard and Blanchard did not provide Amex with any additional job orders.

On September 5, 2018, Amex and Alvarez filed suit against Blanchard. In their amended complaint filed on June 12, 2019, Amex asserts a claim under 42 U.S.C. § 1981 ("Section 1981"), alleging that Blanchard interfered with its right to make and enforce contracts by failing to provide it with any job orders once the strike began in 2015. Meanwhile, Alvarez asserts a state law fraud claim for "damage to his reputation, emotional distress and loss of the enjoyment of life, in accordance with the law and practice in the State of Texas." Dkt. 27 at 13. Blanchard now moves for summary judgment on both claims.

## APPLICABLE LEGAL STANDARDS

**A.  SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's claim. Put another way, "[s]ummary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). A fact issue is material "only if its resolution could affect the outcome of the action." *Manning v. Chevron Chem. Co., LLC*,

332 F.3d 874, 877 (5th Cir. 2003) (quotation marks and citation omitted). When deciding whether a fact issue exists, this court reviews the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. *See Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

**B.  DISCRIMINATION CLAIMS UNDER SECTION 1981**

Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." Section 1981 discrimination claims supported by circumstantial evidence are examined under the *McDonnell Douglas* burden-shifting framework. *See Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015). Under this framework, a plaintiff must first make a prima facie showing of discrimination. *See id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so, a plaintiff must proffer evidence that "(1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Relevant here, "[m]ak[ing] and enforc[ing] contracts" is an enumerated activity under Section 1981. This activity "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

"A plaintiff's showing of a prima facie case raises a presumption of discrimination." *Madison v. Courtney*, 365 F. Supp. 3d 768, 771 (N.D. Tex. 2019). The defendant may then "rebut the presumption of discrimination by producing evidence that

5

the" perceived discriminatory treatment was justified by "a legitimate, nondiscriminatory reason." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). *See also McDonnell*, 411 U.S. at 802.

If the defendant can "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's" allegedly discriminatory treatment, *Burdine*, 450 U.S. at 255, the burden "shifts back to the plaintiff, who must show the articulated reason is pretextual," *Thomas*, 788 F.3d at 179. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the [defendant's] proffered explanation is false or 'unworthy of credence.'" *Id. See also Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

### C.  FRAUD CLAIMS UNDER TEXAS COMMON LAW

Under Texas law, the elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

## ANALYSIS

### A.  AMEX'S SECTION 1981 CLAIM

Blanchard moves for summary judgment on Amex's Section 1981 claim, arguing that: (1) Amex cannot establish a prima facie Section 1981 discrimination claim; (2) that it had legitimate, nondiscriminatory reasons for taking the actions that Amex perceived as

discriminatory treatment—i.e., not providing Amex any job orders since the 2015 strike; and (3) Amex cannot show that such reasons were mere pretext. In its briefing and at oral argument, Blanchard primarily focused on the pretext issue. Consequently, for the purpose of this decision, I assume that Amex has established a prima facie case and focus on whether Blanchard has offered legitimate, nondiscriminatory reasons for its actions and whether Amex has shown those reasons are mere pretext.

Blanchard has provided summary judgment evidence that during the 2015 strike: (1) it drastically cut its contractor work force—demobilizing multiple contractors, including Amex—in order to limit the number of contractors crossing the picket line; and (2) it consolidated work with internal resources and a larger contractor, IES, which was capable of handling work that it previously gave to various contractors. Blanchard contends that, overall, it was quite satisfied with how well IES and its internal resources performed during the strike. So, after the strike ended, it made the business decision to continue using internal resources and continue its consolidation of Amex's work with IES. In sum, Blanchard has provided corroborating summary judgment evidence that its decision to consolidate work with a larger contractor and internal resources was the legitimate, nondiscriminatory reason for not providing Amex with any job orders since the 2015 strike. *See Assariathu v. Lone Star HMA LP*, No. 3:11-CV-99-O, 2012 WL 12897341, at *3 (N.D. Tex. Mar. 12, 2012) ("The defendant does not need to persuade the court that it was actually motivated by the proffered reasons. Rebutting the presumption created by the plaintiff's prima facie case requires only a minimal showing. The defendant's burden is one of production, not persuasion.") (citations omitted).

7

With respect to pretext, Amex offers no evidence that Blanchard's proffered explanation is false or unworthy of credence. *See Thomas*, 788 F.3d at 179. Instead of focusing on Blanchard's decision to consolidate and work with IES, Amex quibbles with certain statements made by Blanchard in its motion. For example, in the Motion for Summary Judgment, Blanchard provides background facts related to Amex's safety audit background and IES's supposed status as a woman owned company. Amex devotes many pages of its brief to discussing the veracity of these inconsequential facts. *See* Dkt. 44 at 7–12. In this vein, Amex points to certain testimony indicating that a few Blanchard employees had been satisfied with its work performance over the years notwithstanding its supposedly imperfect audit background. This evidence does nothing to move the needle at this pretext stage because it is irrelevant to Blanchard's proffered explanation for its actions.

Moreover, Amex has failed to identify any evidence that even suggests its status as a Hispanic owned company was a factor in Blanchard's decision to consolidate work with IES and internal resources. Amex offers two instances of what it believes to be evidence of Blanchard's discriminatory treatment. First, Amex points to certain testimony indicating that a Blanchard employee disparaged Alvarez and Amex by making comments related to Amex's safety record, Alvarez's alleged love of money, and Alvarez's alleged lack of care for Amex employees. *See id.* at 10–11. Next, Amex states:

> Another incident regarding discriminatory treatment against Amex occurred close to the time of the strike. An Amex electrician, of Hispanic descent, walking close to a road was drenched with water from a spraying truck. He

8

>loudly, and perhaps profanely, protested, and although there was no physical confrontation, he was escorted from the refinery and told not to return. However, he was brought back into the plant as an electrician to work for a contractor other than Amex.

*Id.* at 11 (citations omitted).

I do not find either of these examples persuasive because neither concerns Amex's status as a Hispanic owned company or Blanchard's decision to consolidate work with IES and internal resources. The disparaging comments the Blanchard employee supposedly made do not relate to Amex's racial identity. Thus, Amex appears to rely on its own guesswork to connect the dots between the disparaging comments and its racial identity. This is not permitted. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) ("Guesswork and speculation [of racial animus] simply cannot serve as a basis for sending a case to a jury."); *Montgomery v. Sears Roebuck & Co.*, 720 F. Supp. 2d 738, 745 (W.D. La. 2014) ("Fifth Circuit precedent makes it clear that subjective belief of racial motivation cannot import racial animus into an individual's conduct."). The incident involving the Hispanic employee is even less persuasive because I do not see how Blanchard's handling of the splash incident has any bearing on my analysis of the pretext issue. On its face, Blanchard's handling of the situation, even if handled as Amex alleges, reveals nothing discriminatory.

In sum, assuming that Amex established a prima facie case, Blanchard provided legitimate, nondiscriminatory reasons for its decision to stop sending work orders to Amex. Because Amex does not provide any evidence that Blanchard's articulated reason

9

is pretextual, Blanchard is entitled to judgment as a matter of law on the Section 1981 claim.

**B.     ALVAREZ'S FRAUD CLAIM**

Blanchard moves for summary judgment on Alvarez's fraud claim on two grounds. First, Blanchard argues that Alvarez cannot assert a fraud claim because he merely seeks to recover damages derivative of Amex's claims, which is not permitted under Texas law. Next, Blanchard argues there is no evidence that it made a false statement on which Alvarez relied. I find Blanchard's second argument dispositive, so I do not address the first argument.

Alvarez has alleged that Blanchard made two false statements. Blanchard supposedly made the first statement during its 2016 meeting with Alvarez. Alvarez contends that during the meeting, Blanchard assured him that the MSC between Blanchard and Amex remained in effect. As mentioned above, Alvarez does not recall specifically what was said at this meeting beyond "that the refinery wanted to keep the contract in force and did not want to cancel it." Dkt. 44-1 at 6. This is detrimental to Alvarez's claim because there is no summary judgment evidence before me demonstrating that such a representation, even if made, was false. By its terms, the MSC could remain in effect and Blanchard still would not be required to send Amex any job orders. It appears that is what occurred. As Blanchard points out: "[I]t is undisputed that the MSC remained in effect, and as such, Blanchard retained the ability to award job orders to Amex just as Amex retained the ability to reject job orders." Dkt. 40 at 20. Thus, the first alleged statement was not false and cannot satisfy the second element of a

fraud claim. *See P.M.I. Servs. N. Am., Inc. v. Enduro Pipeline Servs.*, Inc., No. EP-16-CV-442-PRM, 2018 WL 8131232, at *8 (W.D. Tex. May 18, 2018) ("To recover on a claim of fraud, a plaintiff must prove that a representation was false when made."); *Vanberg v. Ameripro Funding, Inc.*, No. A-13-CV-849 LY, 2014 WL 12537169, at *7 (W.D. Tex. Jan. 23, 2014) ("[A]s the representation is not false, it cannot support a claim of fraud."); *Savoie v. JP Morgan Chase Bank*, No. 1:13-CV-95, 2013 WL 12137685, at *3 (E.D. Tex. Dec. 9, 2013) ("Because the alleged fraudulent representations were not false, [Defendant] is not liable for fraud.").

In response to Blanchard's Motion for Summary Judgment, Alvarez asserts, apparently for the first time, the existence of another alleged misrepresentation. Alvarez claims that Blanchard[2] "made a material representation that was false, stating that Amex could anticipate additional work from [Blanchard]." Dkt. 44 at 16. Blanchard argues that Alvarez cites no evidence for when the alleged statement was made, who made the statement, or whether the speaker knew it was supposedly false at the time it was made. At its core, this argument amounts to a complaint that Alvarez has not presented the new statement in compliance with Rules 56 and 9(b) of the Federal Rules of Civil Procedure.

At this summary judgment phase, Alvarez has the responsibility to present evidence in support of the alleged statement. In the Rule 56 summary judgment context, the Fifth Circuit has made abundantly clear that "[a]rguments in briefs, like allegations in a complaint, are assertions, not evidence." *Collins v. Jackson Pub. Sch. Dist.*, 609 F.

---

[2] The summary judgment response states that Amex made the misrepresentation, but that is obviously a typographical error. Alvarez clearly meant to say that Blanchard made the purported statement.

11

App'x 792, 795 (5th Cir. 2015). Alvarez has not offered any record cite for the existence of the alleged statement, and I am not obligated to search the record for evidence to support his claim. *See United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in the record.") (citation and quotation marks omitted); *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 408 (5th Cir. 2011) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (quotation marks and citation omitted). Without evidentiary support, Alvarez's bare factual allegation does not meet his summary judgment burden.

Even if there is, somewhere hidden in the summary judgment record, evidence of such a misrepresentation, Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit has repeatedly counseled district courts to enforce this rule "strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent . . . and explain why the statements were fraudulent." *Hoffman v. L & M Arts*, 838 F.3d 568, 577 (5th Cir. 2016) (quoting *Herrmann Holdings, Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)) (ellipsis in original). The failure to meet the Rule 9 standard is typically raised as a failure to meet the pleading standards, resulting in dismissal under Rule 12. However, "while failure to state a claim usually warrants dismissal under Rule 12(b)(6), it may also serve as a basis for summary judgment." *Martin v. Lennox Int'l Inc.*, 342 F. App'x 15, 17 (5th Cir. 2009) (quoting *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992)) (internal quotation marks omitted).

Here, Alvarez has failed to specify when the alleged statement was made, who made the statement, or whether the speaker knew it was supposedly false at the time it was made. In my view, this does not satisfy the Rule 9(b) standard. Under these circumstances, I find that this statement cannot support Alvarez's fraud claim. As explained by one court, when a plaintiff "do[es] not identify the statements and/or the speaker who allegedly made the purportedly fraudulent statement," his "claim must . . . fail." *Valenzuela v. Bank of New York Mellon*, No. CV B-18-36, 2019 WL 5400902, at *11 (S.D. Tex. June 28, 2019).

In sum, because the first alleged misrepresentation is not false and the second alleged misrepresentation fails to meet the Rule 56 and 9(b) standards, Alvarez's fraud claim fails and summary judgment is appropriate.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Motion for Summary Judgment (Dkt. 40) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 15th day of January, 2020.

_____

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

14